LOTTINGER, Judge.
This is a workmen’s compensation suit in which the plaintiff seeks to recover for total permanent disability. This accident is alleged to have occurred during the course and scope of his employment while driving a truck when a foreign body struck his right eye. It is averred further that the vision in not only the right eye but the left as well has become impaired as a result of the injury and that he is now almost blind, and consequently unable to perform the duties of a truck driver.
The trial judge rendered judgment in favor of the -plaintiff awarding him the sum of $23.40 per week, together with interest, for a period not -to exceed 400 weeks, from which judgment the defendant has perfected a suspensive appeal to.this court.
The first question presented is whether or not the plaintiff did in fact sustain the injury as alleged. He was alone in the truck at the time, and apparently first reported the accident, not to the defendant himself, -but to his wife two days later on January 7, 1950. According to the testimony of Dr. Hialc, a particle which appeared to he a piece of rust, was removed by him from the plaintiff’s eye a few weeks later. The record contains no direct evidence which would contradict the testimony of the plaintiff on this point and we therefore agree with the trial judge’s finding that the plaintiff did in fact sustain the accident as alleged.
The medical testimony in the record shows that at the time of the trial, the plaintiff’s eyes were in undoubtedly very poor condition. According to Dr. Phillips, *250 who last examined the plaintiff in November, 1950, he could see hand motion only-in the right eye and finger count at eight feet in the left eye. The real issue presented by the case, therefore, is whether or not this poor eye condition was caused by the accident which occurred on January 5, 1950.
Three doctors testified on the trial of the case. The first of them, Dr. Gains, testified that he had examined the plaintiff on April 26, 1950, at which time the injury was completely healed. He was of the opinion that there had been a previous disease of the eye, and that any injury he might have sustained was purely superficial. He found that the injury had left only a superficial scar adjacent to the pupil which was in fact of the cornea. He was of the opinion that there actually existed two separate conditions: (1) the scar in front of the cornea and (2) a diseased condition -behind the cornea. He did not know how long either had existed but thought the diseased condition to have -been present a long time. Also, he was of the opinion that there was no connection -between the two conditions. At the time he made his examination he found an eighty or ninety per cent loss of vision in the right eye, which he attributed to the disease and thought it had no -connection with the injury. He estimated that if the diseased condition were not present that the scar would have caused only a four or five per cent loss of vision. This doctor did not know the origin of either the scar or the diseased condition and apparently did not examine the left eye. He did state, however, in a letter addressed to defendant’s -attorney, that the plaintiff suffered from interstitial keratitis, a condition which in his opinion had -been present for some time, and the etiological agent of which -could have been syphilis.
Dr. Hiak, to whom the plaintiff had been referred soon after the injury occurred, removed the foreign -body from the injured eye and saw him five or six times after-wards. He found no evidence of a preexisting injury and stated that the last time he examined the eye it was healed. He -also stated that he was unable to explain the present condition of the eye in the light of the accident, and that he could see no -connection between the accident and the condition of the left eye. He thought that there might be a slight loss of vision in the right eye because of the accident, but not much. Furthermore by January 30, 1950, he had discharged the plaintiff as cured.
The record shows that after having been discharged by Dr. Hiak, the plaintiff went to Charity Hospital where he was examined and treated on several occasions by Dr. Phillips. The first of these examinations, was on February 9, 1950, at which time Dr. Phillips found evidence of keratitis. At this time his vision was 20/60 in each eye. On the next examination, November 16, 1950, his vision was recorded as hand motion in the right eye and finger count at eight feet in the left, as previously noted. In his opinion the injury sustained from the foreign matter could not have affected his vision to such an extent as to render him unable to drive a truck, and his lack of vision was the result of some other cause. He was also of the opinion that the injury to the right eye would have had nothing to do with the condition of the left.
There is some evidence in the record, given by the plaintiff’s divorced wife, to the effect that he had suffered from and has been treated for syphilis for a number of years. Whether this is correct or whether syphilis is the cause of the condition of his eyes we find it unnecessary to state. Suffice it to say we are of the opinion that the medical testimony in this case shows conclusively that the injury is not the cause of the loss of sight in plaintiff’s right eye, much less his left. The plaintiff has utterly failed to show any causal connection between the injury and his present disability and his suit must therefore be dismissed. It is, therefore, unnecessary to pass upon the motion to remand, which was filed by defendant and had for its purpose the taking of additional testimony.
For the reasons -assigned the judgment appealed from is reversed and plaintiff’s suit dismissed at his -cost.
Judgment reversed.